ALMA HARRIS, Appellant, *v.* THOMAS TARBET, JOHN QUAYLE, JOSEPH TARBET, STEPHEN THURSTON, GEORGE THOMAS, HENRY W. BALLARD, JOSEPH E. COWLEY, CONSTITUT-ING THE BOARD OF TRUSTEES OF THE LOGAN IRRIGATION DISTRICT, Respondents.

Irrigation Districts — Organized under Sess. Laws 1884, p. 127 — How Affected by Chap. 52, Sec. 27, Sess. Laws 1897. Organization of Irrigation Districts Completed — Duty of Trustees — When Mandamus Will Lie.

1. *Irrigation Districts — Organized under Sess. Laws 1884, p. 127 — How Affected by Chap. 52, Sec. 27, Sess. Laws 1897.*

   Notwithstanding the repeal by the Revised Statutes of the provisions of an act approved March 13, 1884, Sess. Laws 1884, p. 127, in respect to irrigation districts, such provisions continue in force by virtue of Chap. 52, Sec. 27, p. 225 Sess. Laws 1897, as to all irrigation districts organized by virtue of such statute and prior to the repeal.

2. *Organization of Irrigation Districts Completed — Duty of Trustees — When Mandamus Will Lie.*

   Under the provisions of an act approved March 13, 1884, Sess. Laws 1884, p. 127, after an irrigation district' was once organized, the boundaries determined and the trustees elected, it became their duty to assume jurisdiction of the whole district, they could not arbitrarily assume the management of part and reject another part of the district, and mandamus will lie to compel them to perform their duty under the law.

(Decided April 28, 1899.)

Appeal from the First District Court, Cache County, Hon. C. H. Hart, *Judge.*

Application for a writ of mandate to compel the trustees of the Logan Irrigation District to file a map with the county clerk of Cache County, showing the loca-

tion of the Logan and Benson canal and its branches; and to compel the Board of Trustees to take charge of, control, regulate, and maintain the same, and distribute the waters for the purpose of irrigation, to the relator and those interested in the canal and its branches. From an order denying the writ plaintiff appeals. *Reversed.*

*Frank K. Nebeker, Esq.,* for appellant.

*James C. Walters, Esq.,* for respondent.

BARTCH, C. J.

This was an application for a writ of mandate to compel the trustees of the Logan Irrigation District to file a map with the county clerk of Cache County, showing the location of the Logan and Benson canal and its branches located and constructed in that district, and to compel the board of trustees to take charge of, control, regulate, and maintain the same, and distribute the waters of the same for the purposes of irrigation, to the relator and those interested in the canal and its branches. It appears from the testimony that the Logan Irrigation District was organized, as provided by statute, in 1887; that at that time the canal and all its branches, except one, had been constructed; that the remaining one was completed that same year; that the main canal taps the Logan River within the limits of Logan City, and runs in a northerly and then in a westerly direction to a point where it crosses the Oregon Short Line railroad, about a mile and a half beyond which it divides into two branches, known as the lower and upper Benson branches, the latter branch being the one which was constructed after the organization of the irrigation district; that this canal and its branches form one continuous waterway, and furnish water to irrigate large tracts of land; that since the organization of the district the taxes for the maintenance

of the canal were levied against all the lands of the district, regardless of location; that the water rights of the relator, and those whom he represents, were apportioned to them, by the trustees of the district, by issuing to them certificates designating the number of acres which each one was entitled to irrigate; that two trustees have been elected annually from that section of the district in dispute and in which are located the lower and upper Benson branches of the canal; that in 1887, 1889, and 1897, a water master was appointed for each one of those branches; and that the trustees at times exercised jurisdiction over the part of the district in controversy until 1898, when a majority of them refused to do so, and upon demand made refused to file a map as provided by statute, and to control or supervise that part of the canal system.

Under this state of facts the court, on the hearing of the order to show cause why the writ should not issue, denied the writ, and its action in the premises is assigned as error.

The contention of the appellant is substantially that a board of trustees can not arbitrarily establish limits of a canal system of a district organized and existing by virtue of statute, and deprive stockholders, who are compelled to pay taxes as provided by law, of the advantages of the district organization. We think this contention is well founded. The irrigation district in question was organized under the act, approved March 13, 1884, Sess. Laws 1884, p. 127. The act, after specifying the manner in which and the circumstances under which an irrigation district may be organized and incorporated, and, after providing for the election of trustees and officers, upon the organization of a district, and prescribing their duties and the method to be pursued in the levying of taxes on the

property of the district to defray the expenses of the corporation, provides, in Section 10, among other things, as follows: " The trustees shall also have power to meet at such times and places as they may deem expedient to make by-laws, rules, and regulations necessary to carry into effect the objects of the people; to appoint agents, subordinates, and officers, and employ such workmen as may be requisite; to appoint assessors and collectors, or make agreement with the county assessors to assess and collect the tax, and notify collectors when additional installments of the tax will be needed, to construct and complete said canals or ditches with all necessary appurtenances thereto; to cause to be kept an accurate account of all receipts and disbursements, and to complete said canals and ditches, and settle all accounts of the same. Said trustees shall make an annual report of their proceedings under this act to the county court on or before the first day of February, and shall file with the clerk of the county court a map of said irrigation district, showing the location and subdivision of land therein and of the company's canals and ditches."

Sec. 15 reads: " Upon the construction or partial construction of any canal, ditch, or reservoir contemplated in this act, they shall become the property of the irrigation district, and thereafter all funds necessary for repairs upon said canal, ditch, or reservoir, and for keeping the same in order, or for altering or enlarging the same, may be levied by a tax upon the lands benefited, the landholders in the district to vote upon the same in the manner heretofore provided for in this act. And in case of any sudden emergency, caused by inundation or otherwise, said trustees are authorized and empowered to make such repairs, or take such measures as they may deem necessary to preserve the canals, or ditches, or other works of said com-

pany or district, and for payment of the expenses so incurred, the trustees are hereby authorized and empowered to levy a tax for the necessary amount upon all the lands of said districts benefited by such canals or ditches, and said tax may be collected in the same manner and at the same time, if necessary, as provided for the collection of other taxes in said district."

Section 24 provides: "That persons who have constructed canals, ditches, or dams, and taken out water for irrigation purposes before the passage of the act to which this act is amendatory, are hereby authorized to organize under the provisions of said act, and to enjoy all the rights, powers, and privileges guaranteed therein; Provided, they shall proceed in the same manner as is provided for the organization of new companies."

Notwithstanding the repeal of the provisions of that act by the Revised Statutes, they still continue in force as to all districts organized by virtue of the statute prior to such repeal.   Chap. 52, Sec. 27, p. 225, Sess. Laws 1897.

Under the provisions above quoted and others contained in the act, it is clear that, after an irrigation district was once organized as provided therein, the boundaries thereof determined by such organization, and trustees elected to manage the affairs of the corporation, it became the duty of such trustees to assume jurisdiction of the whole district, and control and manage its affairs in accordance with the law under which it was created. There is nothing in the act which authorizes such trustees arbitrarily to assume the management of one portion of the district and reject that of another.   All the owners of property within the district were under the law, subject to payment of an equal rate of taxation for the purpose of creating and maintaining the district organization, and it would be a very harsh and inequitable rule of construction

that would deprive them of the right to share in the benefits to be derived by reason of the incorporation. It is also the duty of such trustees under the law to file with the county clerk of the county in which the district is located, a map of the irrigation district, showing the location of the canal or canals and ditches, as provided in Section 10 of the act. When, therefore, in the case at bar, the respondents, as trustees of the Logan Irrigation District, as shown by the evidence, neglected, and, after demand made, refused to take charge of, control, regulate, and maintain the branches of the canal in controversy and which are within the district, and to distribute and deliver the waters thereof to the appellant and others interested with him, and upon demand made, refused to file a map as provided in Section 10, of the act of 1884, they became guilty of a willful neglect of duty. As such refusal and neglect affect the rights of the appellant and others, who own land in such district and who have borne their portion of the burden to maintain the corporation, as shown by the testimony, the trustees ought to be compelled by *mandamus* to perform their duty under the law.

We are of the opinion that, under the proof in this case, the court erred in denying the writ.

Having reached this conclusion on the merits, it is not deemed important to consider the question of pleading presented by the appellant.

The case is reversed, with costs, and remanded with directions to the court below to issue the writ.

MINER, J., and BASKIN, J., concur.