## Kortz, et al. v. Kimberlin.

(Decided April 24, 1914.)

### Appeal from Daviess Circuit Court.

1. Architect—Liability for Defective Plans.—While an architect is presumed to possess the skill and ability necessary for the practice of his profession, and is liable for damages occasioned by defective plans, yet he does not undertake that his plans will be absolutely perfect, and is liable only for a failure to exercise reasonable skill in the preparation of his plans.

2. Architect—Superintendence of Building—Liability.—Where an architect is employed to superintend the construction of a building, he is not liable at all hazards for every defect in its construction, but is required to use only reasonable care and diligence in seeing that the work is properly done.

3. Architect—Superintendence of Building—Liability—Question for Jury.—The question whether or not an architect has used reasonable care and diligence in superintending the construction of a building is for the jury, where it appears merely that some of the

material is defective or that some of the work is not done in a workmanlike manner.

4. Architect—Action to Recover for Services—Evidence.—In an action by an architect to recover a balance due for his services in drawing the plans and superintending the construction of defendants' residence, where defendants, by counterclaim, sought to recover damages alleged to have resulted from defective plans or because of plaintiff's negligent superintendence of the construction of the building, held, that a verdict and judgment in favor of plaintiff was not flagrantly against the evidence.

SWEENEY, ELLIS & SWEENEY for appellants.

BEN D. RINGO for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, C. W. Kimberlin, an architect, brought this action against defendants, Rose Kortz and Kate Kortz, to recover a balance due for his services in drawing the plans and superintending the construction of their residence near Owensboro in Daviess county. He alleged that he was entitled to receive 5 per cent. of the cost price of the house, which was $10,724.73, or the sum of $536.23. Of this amount he had been paid $300. He asked judgment for the balance of $236.23. After denying the material allegations of the petition, defendants, by counterclaim, set up several items of damage which they alleged resulted because of defective plans, or because of the negligent manner in which the plaintiff superintended the construction of the building. The items of damage relied on aggregated $1,046.70. The case was submitted to a jury, which returned a verdict in favor of plaintiff for $161.10. Plaintiff was given judgment for this amount, and defendants' counterclaim dismissed. Defendants appeal.

The items of damage set up in the counterclaim are as follows:

(1) $200 for permitting contractor to construct the walls of six inch tile instead of eight inch tile, as required by the plans and specifications.

(2) Because of defective plans, and the failure of plaintiff to get a true level of the lot: 1 back porch, $10.50; additional step, $10; 2 concrete beams, $18; 1 10-ft. wall, $11.50; 1 6-ft. wall, $7; 1 wall 9x3x13, $8; 1 wall 6x3x13, $7.

(3) $19.70, for changes made after work was completed, growing out of refusal of plaintiff to make suitable changes in his plans before work was done.

(4) Defective roofing, $50.

(5) $80 for extra work on tiling floor, occasioned by the failure of plaintiff to give the contractor correct copy of plans.

(6) $75 for services of another architect who was employed to provide plans to remedy the defective condition of the roof of the porches.

(7) Defective plans, causing rains and snows to flow on the north side and freeze in front of the front door, $50.

(8) Defective stucco work on outside of walls, $500.

The evidence for plaintiff was to the effect that several changes were made in the plans and specifications by the direction of or with the consent of defendants; that six inch tile for the walls was substituted in the place of eight inch tile on the suggestion of the party furnishing the tile, and this was agreed to. After the house was located, defendants suggested a change in the location, and this, in connection with the fact that they wanted a cellar under the porch, necessitated the additional items embraced under heading No. 2. Under the original plans the roof was to be of tile, but defendants substituted asbestos shingles. The leak was due to this fact.

According to the evidence for defendants, no change in the location of the house was made after the levels were given. The plans themselves provided for a house on a level. The items under heading No. 2 were made necessary because of defective plans and the failure to give true levels. Defendants did not consent to any change in the tile of which the walls were to be constructed. The difference in the cost of the tile is about $25 or $30. In the construction of the porch floor the original plans were proper. In the copy of the plans given to the contractor certain items necessary for the proper construction of the porch were omitted. Defendants were compelled to pay out the sum of $80 to make the porch conform to the plan. The substitution of asbestos shingles instead of tile for the roof in no way affected the roof so far as its leaking was concerned. The protection of the roof depended on the proper construction and location of the material underneath. The

stucco work on the outside walls had begun to crack and peel off. To restore the defects in the inside walls growing out of the leak in the house, and to repair the damage to the outside walls, an expenditure of about $163 would be necessary. Defendants did not know the bad condition of the stucco work until the filing of their amended answer.

It is the contention of the defendants that as to certain of the above items of damage no evidence was presented by plaintiff, and that therefore the finding of the jury is flagrantly against the evidence. Damages to the amount of $75 were allowed by the jury. Exactly which items of damage, does not appear. While it is true that a public profession of an art is a representation or undertaking to all the world that the professor possesses the requisite ability and skill, and it therefore follows that an architect is presumed to possess the skill and ability necessary to the practice of his profession, and is liable for damages occasioned by defective plans; Harmer v. Cornelius, 5 C. B. N. S. 246, 94 E. C. L., 246; 2 Am. & Eng. Ency. of Law, (2nd Ed.), 818; yet he does not undertake that his plans will be absolutely perfect, and is liable only for a failure to exercise reasonable skill in the preparation of the plans. Furthermore, if he be employed to superintend the building, he is not liable at all hazards for every defect in its construction, but is only required to use reasonable care and diligence in seeing that the work is properly done. The mere fact, therefore, that some of the material is defective, or that some of the construction work is not done in a workmanlike manner, is not sufficient to establish as a matter of law that he has not fully performed his contract. Under such circumstances, the question whether or not he used reasonable care and diligence in superintending the work is a question for the jury. Peterson v. Rosson, 24 N. Y., 370; Hubert v. Aitken, 16 Daly (N. Y.), 237; Stewart v. Boehme, 53 Ill. App., 463; Shipman v. State, 43 Wis., 381.

Take, for instance, the stucco work, which is one of the largest items of damage claimed. The defendants all testify that they, who had been occupying the house, could not discover its defective condition until after the time the amended answer was filed. It had only recently begun to peel off. While it is doubtless true that an architect has better means of observation and detection,

yet it cannot be said that the evidence conclusively shows that plaintiff, by the exercise of reasonable care and diligence, could have discovered the defective condition of the stucco before it began to fall off. Notwithstanding the proof as to its condition, it was for the jury to say, under all the circumstances, whether or not plaintiff failed to exercise reasonable care and diligence. The same is true of the other items. Taking into consideration the fact that damages were allowed, and the uncertainty as to the particular items, or the amount thereof, we are unable to say that the finding of the jury was flagrantly against the evidence.

We find no prejudicial error in the admission or rejection of evidence.

The instructions are more favorable to the defendants than they should be.

Judgment affirmed.