642 NEBRASKA REPORTS. [Vol. 109

State, ex rel. Clarke, v. Gering Irrigation District.

STATE, EX REL. S. C. CLARKE ET AL., APPELLEES, V. GERING IRRIGATION DISTRICT ET AL., APPELLANTS.

FILED FEBRUARY 15, 1923. No. 23028.

1. **Waters:** IRRIGATION DISTRICTS. An irrigation district is a public corporation; its funds are derived from taxation of all land within the district, and the main purpose of its organization is to furnish water for the purpose of irrigation to all the landowners within the district upon fair and equitable terms and conditions.

2. ———: ———: LATERALS. Lateral ditches are often necessary portions of the irrigation works of an irrigation district, and, where necessary, should be provided, maintained and supervised by the district, in order that a just apportionment of water to each landowner may be made.

3. ———: ———: ———: Owners of land within the district may provide and control such laterals themselves if the district fail to do so, and they can agree among themselves as to the proper upkeep of the laterals and the equitable division of the water.

4. ———: ———: MANDAMUS. If, in the case of such a lateral constructed by the landowners, it is not kept in repair, and contentions arise between such landowners, some receiving more water from the lateral than their just share, and others little or no water when entitled to the same, the landowners who are deprived of water may, by writ of mandamus, compel the directors of the irrigation district to take such steps as to provide them with their just share of the water and to supervise the distribution of the same.

APPEAL from the district court for Scotts Bluff county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Olsen & Cottle, Mothersead & York* and *Floyd E. Wright,* for appellants.

*Morrow & Morrow,* contra.

Heard before MORRISSEY, C. J.; LETTON, FLANSBURG, DEAN and ALDRICH, JJ.; RAPER and TROUP, District Judges.

LETTON, J.

The relators are landowners living within the boundaries of the Gering Irrigation District. Their land is

situated toward the lower end of a lateral, known as lateral No. 2, and deriving its supply of water from the main canal belonging to the district. The lateral is about three or four miles long. The lateral was not constructed by the irrigation district, but by the landowners whose lands it was designed to water. For a number of years the landowners toward the lower end of the lateral have been unable to obtain their proper share of the water taken from the main canal. The upper water-users took so much of the water in times of scarcity that little or none could be had near the lower end of the lateral. They also had trouble during a number of years, both with regard to washouts, when there was an excessive flow in the main canal, and scarcity of water, causing loss of crops in some seasons. A number of years ago the owners of lands toward the lower end of the lateral took steps to form a corporation and to take over and control this lateral, but the effort proved abortive and the troubles have continued. Relators have demanded relief from the directors of the irrigation district, asking that the district take over and control the distribution of water along the lateral, but this request was refused. They thereupon brought this proceeding in mandamus, for the purpose of compelling the board of directors of the district to make immediate provision for the repair and enlargement of lateral No. 2, so as to render its capacity sufficient to furnish them their *pro rata* share of the water, and to require the district, through its superintendent, to supervise and measure the distribution of water through the outlets of the lateral, so that each water-user should receive his *pro rata* share.

The respondents deny that the lateral is any part of the irrigation works of the district. They admit that the district has never attempted to maintain or keep the lateral in repair, or supervise or control it; they allege that Highland Lateral Company No. 2 is the owner of the lateral; that the plan of organization

644    NEBRASKA REPORTS.    [Vol. 109

State, ex rel. Clarke, v. Gering Irrigation District.

adopted by the district does not include the construction or repairs of any lateral, but only the delivery of water at the bank of its main canal; that it is not required to deliver water to the respective landowners, but complies with the law by delivering water from the main canal at the bank into the laterals, and that no provision has ever been made for delivering water at any other place; that each landowner has built and maintained the necessary laterals for the conveyance of water from the main canal to his individual lands, and that relators and their predecessors in ownership have for more than 20 years acquiesced in their said plan; that the district has exhausted its tax levy and has no funds with which to perform, and no law authorizing the raising of funds for such a purpose.

The facts alleged in the petition as to the condition of the lateral and the deprivation of water supply to relators are undisputably established, and, in fact, not seriously controverted by respondents.

Since the defenses made are legal in their nature, it becomes necessary to examine the statute to ascertain the duties and powers of the directors of an irrigation district, and the rights of the landowners in the district with respect to the distribution and apportionment of water.

Is the lateral a part of the irrigation works of the district, and does the fact that the district has never constructed a lateral excuse its failure to furnish water to residents? Section 2865, Comp. St. 1922, makes it the duty of the directors of irrigation districts "to make all necessary arrangements for right of way for laterals from the main canal to each tract of land subject to assessment, and when necessary the board shall exercise its rights of eminent domain to procure right of way for the laterals and shall make such rules in regard to the payment for such right of way as may be just and equitable." This evidently contemplates that the district shall procure the right of way for the necessary

VOL. 109]          JANUARY TERM, 1923.              645

State, ex   rel. Clarke, v. Gering Irrigation District.

laterals "to each tract of land subject to assessment.". That the district has not heretofore furnished water except at head gates upon its main canal, is no defense. The fact that it has neglected a plain duty for many years is no reason why it should continue to neglect it. That the plan of the district did not contemplate the construction of laterals is also no defense. If the plan was defective and failed to accomplish the statutory duty of the district to furnish water to each landowner in the district, in section 2866 it is provided: "The board, its agents and employees shall have the right to enter upon any land within the district, to make surveys, and may locate the line of any canal or canals and the necessary branches." This language presumes the necessity of surveys and the location of canals and necessary branches after the formation of the district, and assumes that "branches" or laterals may be necessary to carry out the purpose of the organization.

By section 2865 it is made the duty of the board to "establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purpose of this article." This section further provides that water shall be apportioned ratably to each landowner upon the basis of the ratio which the last assessment of said owner for district purposes bears to the whole sum assessed by the district.

An irrigation district is a public corporation. Its funds are derived from the taxation of all land within the district. The very purpose of its organization is to furnish water upon fair and equitable terms and conditions to each and every landowner within the district. Comp. St. 1922, secs. 2857-2953. This, in the case of some small districts, may perhaps be done by supplying water direct to landowners from the banks of one canal. But this can seldom be done in districts embracing many

646 NEBRASKA REPORTS. [Vol. 109

State, ex rel. Clarke, v. Gering Irrigation District.

acres. In such case there must be laterals to carry the water to the ultimate user. Such laterals are necessary portions of the irrigation works and should be provided, maintained and supervised by the district, so that a just apportionment of the water may be supplied to each landowner therein. It would be manifestly unjust and unfair to assess a landowner whose property is situated several miles from the main canal without providing him reasonable facilities to obtain the water for the furnishing of which he is taxed. To sustain the position of the respondents would be to hold that the owners of land adjacent to the main canal are entitled to receive water without further initial outlay, while at the same time other landowners, who are also taxed according to valuation, shall be compelled to build and maintain expensive works and furnish supervision for such works in order to obtain that which is supplied without such expense to others who have no greater right. This would be clearly inequitable, unfair and unjust, and such construction of the statute ought not to be adopted. Of course, landowners may provide their own laterals if they desire, but where there is more than one water-user taking water from the same lateral, and any dispute arises between the users, the district board should regulate the supply, as in the case of other users of water. Water is as essential to successful and profitable agriculture in arid regions as blood is to the body, and its distribution is as necessary to such pursuit as the circulation of the blood is to animal tissues. The statute, both by express direction and by implication, provides that all powers reasonably necessary to carry into effect the object and purpose of the organization are possessed by the board of directors.

That the petition does not show that the district has sufficient funds on hand which can be utilized for the purpose of repairing the lateral is not a sufficient

defense under the circumstances proved in this case. The evidence shows that, upon several occasions during the years in which there has been trouble over the water in the lateral, the presence of a ditch-rider who could and would control the quantity of water withdrawn from the lateral by the upper owners would have allowed the water to which the lower owners were entitled to flow to their lands. Furthermore, the writ did not compel instantaneous action, but only required the board of directors to make provision for the repair and enlargement of the lateral and for its supervision in the future. The refusal to perform the duties requested was never placed by the directors on the ground that they had no funds with which to perform, but their refusal has always been upon the ground that the district had no authority to construct, maintain and supervise the laterals, their duty ending with the opening of the head-gate upon the main canal; and this is the real and substantial issue in this case.

The respondents argue that section 8462, Comp. St. 1922, provides: "Any owner or person in control of any ditch for irrigation purposes * * * shall construct necessary outlets *in the banks* for the delivery of water to all persons who are entitled to the same;" and that this is the measure of their duty. This section is no part of the irrigation district act, and does not affect the duty of the district to furnish water. If applicable at all, it only prescribes upon whom the duty to construct outlets rests.

Similar questions as to the rights of water-users have been presented to the supreme courts of California, Utah, and Idaho, and they have taken the same view. *Jenison v. Redfield,* 149 Cal. 500; *Niday v. Barker,* 16 Idaho, 73; *City of Nampa v. Nampa & Meridian Irrigation District,* 19 Idaho, 779, 23 Idaho, 422; *Harris v. Tarbet,* 19 Utah, 328.

AFFIRMED.